Mr. Justice Cox
delivered the opinion of the Court:
In 1880 Richard L. Thompson, being single and unmarried, executed a deed of trust to secure a debt. Afterwards he married; and after that, again, he executed a second deed of trust, in which his wife joined, for the purpose of releasing any right of dower she might have, to secure certain dues payable to the Home Building Association. Very shortly after that Mr. Thompson died intestate, leaving his widow surviving him and several collateral heirs, some of whom are adults, and some others infants. These adult heirs continued, for a time, to pay the dues to the building association and then concluded, in order to wind up the estate, to allow a sale under the deed of trust and allow the proceeds to be applied first to the payment of the dues to the building association; and, second, to pay the balance of general indebtedness which the personal estate was in *541 sufficient to pay. The trustee paid the surplus proceeds, amounting to $2,418, into the hands of the administrator of the deceased. This administrator filed a petition in the Orphans’ Court asking instructions as to the proper distribution of the funds. The widow petitioned to be made and considered a distributee, and the heirs claimed that the fund belonged to them as the proceeds of real estate which they were entitled to, subject to this deed of trust.
It is not made very clear on the face of the widow’s petition whether she claims this fund as proceeds of the real estate in which she had a dower interest, or as her pars rationabilis, as part of the personal estate. Unfortunately it is the settled law of this District that a widow is not dowable of an equity of redemption; she cannot, therefore, in this case claim as dowress; and if she can claim here at all, it must be for her share of the personal estate. The question, therefore, is whether this was personal estate. It is claimed that the deed of trust executed by the husband operated as an equitable conversion of this land into personal estate when it was sold, and that the widow was entitled to one-half of it, as widow. , .
I should remark, in the first instance, that the doctrine of equitable conversion is a doctrine purely of Courts of Equity. Those courts, in some cases, treat money as land, or land as money; but no Orphans’ Court has any such jurisdiction. The Orphans’ Court has no right to say, when land has descended to heirs, that some act of the testator, some deed or will, has equitably converted that estate into money, and then proceed to administer it as money; so that, if the widow was entitled to treat this as personal estate, her remedy would have been by filing a bill in equity in this Court.
But we will pass that question for the present and proceed to the merits of the case.
The deed of trust which was executed by Mr. Thompson was in the ordinary form, and does not convey the idea *542 that his primary object was to convert his land into money. It is clearly an ordinary security for indebtedness to a building association. After executing that, the fee simple, subject to this deed, remained in him. He died intestate, and it necessarily desended to his heirs at law and became their property; and the natural conclusions would be that if it was sold under the deed of trust, it was sold as their property and the surplus proceeds would come back to them. The only reliance of the widow is the concluding words in which the trustees are directed to pay over any residue “ to said Richard L: Thompson, his executors, administrators, or assigns,” instead of, “ heirs, executors, etc.,” which is the usual form. It is also provided in the deed that “ Thompson, his heirs and assigns,” shall have the right to hold and occupy until some default or failure shall be made; so that if there should be no default or failure, and if the heirs should continue to pay the dues until the debt was extinguished, the property would be theirs absolutely. It also provides that in the event of any such failure or default made, either by himself or his heirs, then the trustee should sell. Now, this final direction in the deed to pay over the surplus is perfectly needless. The law supplies the duty of trustees under such circumstances. When the land is sold, in the mortgagor’s life, the surplus is payable to him, or if he should die before the day of payment to his executors or administrators; if, however, it is sold after his death, it is payable to his heirs. We all know that these expressions are often used inaccurately. If a man bequeathed personal estate to one and his heirs, nobody would pretend that the heirs would be entitled to it. So in case of a devise of land to one, his executors and administrators, nobody would pretend that his executors or administrators would be entitled to it.
The fair interpretation of these inaccurate and often inadvertent expressions would seem to be that they are intended to express just what the law would ordain. In this *543 case, the surplus is directed to be paid to the grantor, his executors, administrators and assigns — which is correct if the sale is made in his life-time and he should die before receipt of the money. But the case of his death before the sale would make a different case, and is simply, as we think, not provided for in the deed, but is left to the operation of the law.
The property having become the property of the heirs by descent, they are entitled to the surplus proceeds of sales. It appears to us that that is perfectly clear law, and it was go ruled in Wright vs. Nose, 2 Sim. W Stu., 323.
■ Some cases have been cited on the part of the widow, as establishing a different rule; but they do not seem to us to do so.
Although reluctant to deprive a widow of a share in the estate of her husband, we are satisfied that the heirs are entitled to the surplus; and therefore the decree of the Orphans’ Court, distributing it according to that theory, must be affirmed.